**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

EON SHEPHERD,

                            Plaintiff,

      v.                                                   No. 04-CV-655
                                                   (DNH/DRH)

GLEN S. GOORD, Commissioner;
SUPERINTENDENT BENNETTE; CAPTAIN
WENDERLICH; DEPUTY WEST; SERGEANT
ERICSON; SERGEANT POST; OFFICER
TWEED; SUPERINTENDENT GIRDICH; DR.
LESTER WRIGHT; STEVEN VAN BUREN; N.A.
SMITH, Administrator; N.P. PARMER; NURSE
KIM PERRIA; NURSE FARCHILD; DR. CANFIELD;
J. COLVIN, Deputy of Security; SERGEANT J.
KREMER; NURSE RILEY; and NURSE SULLIVAN,[1]

                            Defendants.

_____

**APPEARANCES:**                                    **OF COUNSEL:**

EON SHEPHERD
Plaintiff Pro Se
96-A-0356
Green Haven Correctional Facility
Post Office Box 4000
Stormville, New York 12582

HON. ANDREW M. CUOMO                    SENTA B. SIUDA, ESQ.
Attorney General for the                      Assistant Attorney General
   State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

_____

[1]The correct spelling of the names of defendants Bennette, Tweed, and Ericson are Bennett, Twedt, and Erickson. Defs. Mem. of Law (Docket No. 116, pt. 2) at 1 nn.2-4. The spellings used in the caption will be used herein.

**REPORT-RECOMMENDATION AND ORDER**[2]

Plaintiff pro se Eon Shepherd ("Shepherd"), an inmate in the custody of the New York

State Department of Correctional Services ("DOCS"), brings this action pursuant to 42

U.S.C. § 1983 alleging that defendants, nineteen DOCS employees,[3] violated his

constitutional rights under the First and Eighth Amendments.  Second Am. Compl. (Docket

No. 75).  Presently pending is the motion of ten defendants[4] for judgment on the pleadings

pursuant to Fed. R. Civ. P. 12(c).  Docket No. 116.  Shepherd opposes the motion.  Docket

No. 120.  For the reasons which follow, it is recommended that the motion be granted in

part and denied in part.

---

[2]This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

[3] Shepherd initially named twenty-three defendants.  Second Am. Compl.  By an order entered August 14, 2006, the Court dismissed two John Doe and one Jane Doe defendants named in the original complaint who were deleted from Shepherd's Second Amended Complaint.  Docket No. 75.  Furthermore, it appears from the docket that defendant Riley has never been served with process or otherwise appeared in the action.  See second docket entry dated August 14, 2006; Docket No. 98 (summons returned unexecuted); see also Docket Nos. 101, 105 (answers filed for all defendants except Riley).  Pursuant to Fed. R. Civ. P. 4(m), service of process upon Riley was not completed within the 120 days allowed by the rule and the complaint as to her should be dismissed without prejudice for that reason; see also N.D.N.Y.L.R. 4.1(b).

[4]Bennette, Girdich, Wright, Van Buren, Goord, Tweed, Post, Ericson, Kremer, Colvin, and Riley. Defs. Mem. of Law at 1.  Defendants West, Wenderlich, Canfield, Parmer, Smith, Perrea, Fairchild, and Sullivan have not joined the motion.  Defs. Mem. of Law at 1 n.5.

**I. Background**

The facts are presented in the light most favorable to Shepherd as the non-moving party.  See Ertman v. United States, 165 F.3d 204, 206 (2d Cir. 1999).

At all relevant times, Shepherd was housed in DOCS correctional facilities, including Green Haven Correctional Facility ("Green Haven").  Second Am. Comp. at ¶ 1.  On or about July 4, 2001, as Shepherd was traveling to evening recreation, he was searched. Id. at ¶ 15.  While one corrections officer passed a hand-held metal detector over Shepherd's head, defendant Tweed manually searched Shepherd's hair and ripped his dreadlocks.  Id.  As this was occurring, Shepherd attempted to explain to defendant Post that Tweed's actions were in violation of his religious beliefs.  Id. at ¶ 16.  "Defendant Post informed [Shepherd] that defendant Tweed is allowed to put his hands in [Shepherd's] dreadlocks due to security reasons . . . ."  Id.

On or about September 11, 2002 upon his return from a court appearance, Shepherd was placed into a different cell block.  Id. at ¶ 17.  The new cell block exposed Shepherd to second-hand or environmental tobacco smoke ("ETS") and did not have a window.  Id. at ¶¶ 17-18.  As a result of the ETS, Shepherd experienced chest pains, shortness of breath, wheezing, dizziness, and two asthma attacks on or about September 17 and October 1.  Id. at ¶¶ 17, 18, 20.

After the first asthma attack, Shepherd was taken to the infirmary for a breathing treatment and the physician that examined him submitted an emergency housing unit change form for Shepherd to be transferred to a cell with a window.  Id.  at ¶ 18.  On September 20, 2002, Shepherd submitted a change of housing unit form to defendant Colvin citing the aggravation of his asthma by the ETS as the reason for transfer.  Id. at ¶

19.  Five days later, Shepherd submitted another letter to Colvin seeking a cell block transfer.  Id.  Shepherd received no response.  Id.

After the second asthma attack, Shepherd was again taken to the infirmary, received a breathing treatment, and the physician "again placed another request for [Shepherd] to be housed in a window cell."  Id. at ¶ 20.  Shepherd again submitted multiple housing unit change forms, spoke with other defendants[5] concerning his illness and desire to transfer, and wrote to these defendants but to no avail.  Id. at ¶¶ 21.  Additionally, Shepherd forwarded to defendant Bennette an appeal of his denial of a housing transfer, explaining his medical situation and the ETS.  Id. at ¶ 23.  Bennette never responded.  Id.

Sometime in October 2002, Shepherd was transferred to a new cell that had a window. Id.  at ¶ 24.  However, in August 2003, Shepherd was transferred to another cell which did not have a window.  Id.  ¶ 25.  After the transfer, Shepherd began experiencing respiratory complications again.  Id.  Shepherd notified defendant Kremer on numerous occasions of his respiratory difficulties and was advised to address his concerns with the medical department.  Id.  Shepherd also notified others of the problems he was experiencing.  Id. ¶¶ at 26-27.

Shepherd and his wife submitted written complaints to defendants Gidrich and Goord concerning Shepherd's medical treatment, but they failed to remedy the situation.  Id.  at ¶¶ 43, 45.  Additionally, Shepherd forwarded defendant Wright several complaints regarding his medical care.  Id. at ¶ 44.  In response to Shepherd's complaints, Wright assigned defendant Van Buren to investigate the alleged unconstitutional conduct.  Id.  Shepherd

---

[5] Two of these defendants, West and Wenderlich, have not joined the present motion.

also alleges that "[d]efendant Goord implemented a non-smoking policy and failed to ensure that [it] was being enforced and adhered to by his officials, as well as failing to provide [Shepherd] with a smoke free environment . . . ." Id. at ¶ 45.[6]

## II. Discussion

In his complaint Shepard alleges that (1) Tweed and Post violated his First Amendment rights when they manually searched through his dreadlocks; (2) Bennette, Gidrich, Wright, Van Buren, Ericson, Colvin, West, Wenderlich, and Kremer were deliberately indifferent to his medical needs regarding his exposure to ETS; and (3) Bennette, Gidrich, Wright, Van Buren, Canfield, Perrea, Sullivan, Farchild, Parmer, and Smith were deliberately indifferent to his medical needs regarding the medical care rendered for his knees and back. The moving defendants argue that (1) the Court lacks jurisdiction over Riley, (2) the defendants who are supervisors were not personally involved, (3) the search of Shepherd's dreadlocks did not violate his First Amendment rights, (4) the non-medical defendants were not deliberately indifferent to Shepherd's asthma, and (5) all moving defendants are entitled to qualified immunity.

_____

[6]Shepherd also alleges that from approximately December 2002 until October 2003, he received inadequate medical care for his knees and back. Second Am. Compl. at ¶¶ 28-42. Shepherd claims that he was (1) improperly denied use of his knee brace and cane in his cell, (2) not provided with adequate pain medication, (3) improperly denied his prescription medical boots, and (4) improperly denied a special mattress to alleviate his back pain. Id. The defendants allegedly responsible for these claimed violations have not joined the pending motion and, therefore, matters related to these allegations will not be further addressed in this report.

## A. Legal Standard

"After the pleadings are closed, a motion to dismiss for failure to state a claim is properly brought as a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c)." Allan v. Woods, No. 05-CV-1280 (NAM/GJD), 2008 WL 724240, at *1 (N.D.N.Y. Mar. 17, 2008) (citing Maggette v. Dalsheim, 709 F.2d 800, 801 (2d Cir. 1983)).  "The test for evaluating a [Fed. R. Civ. P.] 12(c) motion is the same as that applicable to a motion to dismiss under Fed. R. Civ. P. 12(b)(6)."  Irish Lesbian & Gay Org. v. Giuliani, 143 F.3d 638, 644 (2d Cir. 1998); Burke v. New York, 25 F. Supp. 2d 97, 99 (N.D.N.Y. 1998) (Munson, J.).

Fed. R. Civ. P. 12(b)(6) authorizes dismissal of a complaint that states no actionable claim.  When considering a motion to dismiss, "a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant." Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994).  However, "a 'complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)."  Gilfus v. Adessa, No. 5:04-CV-1368 (HGM/DEP), 2006 WL 2827132, at *3 (N.D.N.Y. Sept. 30, 2006) (citing De Jesus v. Sears, Roebuck & Co. 87 F.3d 65, 70 (2d Cir. 1996) (internal quotations omitted)).  Thus, dismissal is only warranted if it appears, beyond a reasonable doubt, that the non-moving party cannot prove a set of facts which would support his or her claim or entitle him or her to relief.  See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Harris v. City of N.Y., 186 F.3d 243, 247 (2d Cir. 1999).

When, as here, a party seeks dismissal against a pro se litigant, a court must afford the non-movant special solicitude.  See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006).  As the Second Circuit has stated,

[t]here are many cases in which we have said that a pro se litigant is entitled

6

to "special solicitude," . . . that a <u>pro se</u> litigant's submissions must be
construed "liberally,". . . and that such submissions must be read to raise the
strongest arguments that they 'suggest. . . . .  At the same time, our cases
have also indicated that we cannot read into <u>pro se</u> submissions claims that
are not "consistent" with the <u>pro se</u> litigant's allegations, . . or arguments that
the submissions themselves do not "suggest, . . ." that we should not "excuse
frivolous or vexatious filings by <u>pro se</u> litigants" . . . and that <u>pro se</u> status
"does not exempt a party from compliance with relevant rules of procedural
and substantive law . . . ."

<u>Id.</u> (citations and footnote omitted).

## B. Personal Involvement

Certain defendants contend that Shepherd has failed to establish their personal

involvement.  "'[P]ersonal involvement of defendants in alleged constitutional deprivations is

a prerequisite to an award of damages under § 1983.'"  <u>Wright v. Smith</u>, 21 F.3d 496, 501

(2d Cir. 1994) (quoting <u>Moffitt v. Town of Brookfield</u>, 950 F.2d 880, 885 (2d Cir. 1991)).

Thus, supervisory officials may not be held liable merely because they held a position of

authority.  <u>Id.</u>; <u>Black v. Coughlin</u>, 76 F.3d 72, 74 (2d Cir. 1996).  However, supervisory

personnel may be considered "personally involved" if:

(1) [T]he defendant participated directly in the alleged constitutional violation,
(2) the defendant, after being informed of the violation through a report or
appeal, failed to remedy the wrong, (3) the defendant created a policy or
custom under which unconstitutional practices occurred, or allowed the
continuance of such a policy or custom, (4) the defendant was grossly
negligent in supervising subordinates who committed the wrongful acts, or (5)
the defendant exhibited deliberate indifference to the rights of inmates by
failing to act on information indicating that unconstitutional acts were
occurring.

<u>Colon v. Coughlin</u>, 58 F.3d 865, 873 (2d Cir. 1995) (citing <u>Williams v. Smith</u>, 781 F.2d 319,

323-24 (2d Cir. 1986)).

7

### 1. Bennette

Shepherd contends that Bennette, the facility Superintendent, never responded to Shepherd's appeal from the denial of a requested housing unit change and that Bennette's actions "failed to ensure the nonsmoking policy was being adhered to . . ., failing to ensure . . . properly trained [employees] . . ., [and] fail[ing] to ensure that [Shepherd] was provided with adequate medical treatment . . . ."  Second Am. Compl. at ¶¶ 23, 24.

First, failing to "receive a response to a complaint . . . is insufficient to establish personal involvement [especially when] there is no other showing that [defendant] knew of or directly participated in any alleged violation."  Abbas v. Senkowski, No. 03-CV-476 (GLS/DRH), 2005 WL 2179426, at *2 (N.D.N.Y. Sept. 9, 2005).  Thus, Bennette's failure to respond to Shepherd, without more, does not suffice to establish that he was personally involved.

Second, Bennette cannot be held liable solely because he held a supervisory position over other defendants.  Shepherd does not specifically contend that Bennette was directly involved or had knowledge of the alleged constitutional violations.  However, even when reading the complaint in the light most favorable to Shepherd and liberally construing allegations of direct involvement and knowledge, no factual basis is alleged for Bennette's personal involvement.  Additionally, although Shepherd contends that there was negligent supervision, he asserts no facts beyond his conclusory allegations that Bennette created a hiring or retention policy which allowed constitutional violations to continue or was grossly negligent in managing the other named defendants.

Accordingly, defendants' motion with respect to Bennette should be granted on this ground.

8

### 2. Girdich & Wright

A position in a hierarchical chain of command, absent something more, is insufficient to support a showing of personal involvement.  Thus, Girdich, a facility Superintendent, and Wright, a DOCS administrator, cannot be held liable solely because he held a supervisory position over other defendants.  Shepherd does not specifically contend that either defendant was directly involved or had knowledge of the alleged constitutional violations.  However, even when reading the complaint in the light most favorable to Shepherd, any liberally construed allegations of direct involvement and knowledge still lack any factual basis.

Additionally, although Shepherd contends that there was negligent supervision, there is no fact asserted beyond his conclusory allegations that either of these two defendants created a hiring or retention policy which allowed constitutional violations to continue or was grossly negligent in managing the other named defendants.  The only allegation that may be construed as such is that Wright delegated responsibility to Van Buren to conduct an investigation into Shepherd's complaints.  However, without more, this command was within his authority and was neither unconstitutional nor grossly negligent.

Accordingly, defendants' motion with respect to Gidrich and Wright should be granted on this ground.


### 3. Van Buren

Shepherd argues that because "Van Buren failed to conduct an adequate investigation . . . , [he] was not receiving adequate medical treatment."  Second Am. Compl. at ¶ 44.

However, Shepherd does not specifically contend that Van Buren was directly involved or had knowledge of the alleged constitutional violations.  Even if Van Buren conducted an inadequate investigation after the alleged constitutional misconduct "occurred[, it] is not evidence of his personal involvement in the incident . . . ."  Rodriguez v. Schneider, No. 95-CV-4083 (RPP), 1999 WL 459813 at *32 (S.D.N.Y. June 29, 1999).  Therefore, these unfounded and conclusory allegations, absent something more, are insufficient to allege Van Buren's personal involvement.

Accordingly, defendants' motion with respect to Van Buren should be granted on this ground.

### 4. Goord

Shepherd claims that he sent Goord, the Commissioner of DOCS, multiple complaints which were not adequately remedied and that "Goord implemented a non-smoking policy and failed to ensure that his policy was being enforced and adhered to . . . ."  Second Am. Compl. at ¶¶ 45-46.  As previously noted, failing to "receive a response to a complaint . . . is insufficient to establish personal involvement[, especially when] there is no other showing that [defendant] knew of or directly participated in any alleged violation."  Abbas v. Senkowski, No. 03-CV-476 (GLS/DRH), 2005 WL 2179426, at *2 (N.D.N.Y. Sept. 9, 2005). Also, Goord cannot be held liable solely because he held a supervisory position over other defendants.

Additionally, while Goord was involved in the development and implementation of the DOCS smoking policies, "there can be no personal liability where there has been no demonstration that the policy resulted in any deprivation of plaintiff's constitutional rights."

10

<u>Benjamin v. Comm'r N.Y.S. Dep't Corr. Serv.</u>, 2007 WL 2319126 at *11 (S.D.N.Y. Aug. 10, 2007).  As the Supreme Court stated in <u>Helling</u>, "inmates do not have an unqualified constitutional right to a smoke-free environment, but only a right to be free of involuntary exposure to a level of ETS which unreasonably endanger[s] their future health, and exposure to which would be deemed contrary to current standards of decency."  <u>Johnson v. Goord</u>, No. 01-CV-9587 (PKC), 2005 WL 2811776 at *8 (S.D.N.Y. Oct. 27, 2005) (<u>citing</u> <u>Helling</u>, 509 U.S. at 35).  However, as discussed <u>infra</u>, defendants did not violate Shepherd's Eighth Amendment rights in this regard.  Thus, Shepherd has not suffered a constitutional deprivation.

Furthermore, "[n]either the [smoking] policies adopted nor the enforcement thereof, even if imperfect, constitute deliberate indifference on the part of defendants."  <u>Johnson</u>, 2005 WL 2811776, at *8.  Wholly conclusory allegations of insufficient training and supervision are inadequate to establish Goord's personal involvement.  Moreover, supervision resulting in a slightly imperfect system of enforcing the smoking policy is also insufficient to establish Goord's personal involvement.

Therefore, defendants' motion as to Goord should be granted on this ground.

## C. Eighth Amendment

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment."  U.S. Const. amend. VIII.  This includes the provision of medical care and punishments involving "the unnecessary and wanton infliction of pain."  <u>Hathaway v. Coughlin</u>, 37 F.3d 63, 66 (2d Cir. 1994) (citations omitted).  A prisoner advancing an Eighth Amendment claim for denial of medical care must allege and prove deliberate indifference

to a serious medical need.  Wilson v. Seiter, 501 U.S. 294, 297 (1991); Hathaway, 37 F.3d at 66.  More than negligence is required "but less than conduct undertaken for the very purpose of causing harm."  Hathaway, 37 F.3d at 66.  The test for a § 1983 claim is twofold.  First, the prisoner must show that there was a sufficiently serious medical need.  Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998).  Second, the prisoner must show that the prison official demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm.  Id.  "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."  Farmer v. Brennan, 511 U.S. 825, 844 (1994).

"'Because society does not expect that prisoners will have unqualified access to healthcare,' a prisoner must first make [a] threshold showing of serious illness or injury" to state a cognizable claim.  Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003)(quoting Hudson v. McMillian, 503 U.S. 1,9 (1992)).  Because there is no distinct litmus test, a serious medical condition is determined by factors such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain."  Brock v. Wright, 315 F.3d 158, 162-63 (2d Cir. 2003)(citing Chance, 143 F.3d at 702).  The severity of the denial of care should also be judged in the context of the surrounding facts and circumstances of the case.  Smith, 316 F.3d at 185.

Deliberate indifference requires the prisoner "to prove that the prison official knew of and disregarded the prisoner's serious medical needs."  Chance, 143 F.3d at 702.  Thus, prison

officials must be "intentionally denying or delaying access to medical care or intentionally

interfering with the treatment once prescribed." Estelle v. Gamble, 429 U.S. 97, 104,

(1976).  "Mere disagreement over proper treatment does not create a constitutional claim"

as long as the treatment was adequate. Id. at 703.  Thus, "disagreements over medications,

diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for

specialists . . .  are not adequate grounds for a § 1983 claim." Magee v. Childs, No. 04-CV-

1089 (GLS/RFT), 2006 WL 681223, at *4 (N.D.N.Y. Feb. 27, 2006).  Furthermore,

allegations of negligence or malpractice do not constitute deliberate indifference unless the

malpractice involved culpable recklessness.  Hathaway v. Coughlin, 99 F.3d 550, 553 (2d

Cir. 1996).

    Courts have held that "[a]lthough an asthma condition alone may not be serious enough

to constitute a sufficient medical condition, an asthma attack, depending on its severity,

may be sufficient."  Carlisle v. Goord, No. 03-CV-296 (FJS/GHL), 2007 WL 2769566, at *4

(N.D.N.Y. Sept. 21, 2007); see also Scott v. DelSignore, No. 02-CV-029, 2005 WL 425473,

at *9 (W.D.N.Y. Feb. 18, 2005) (stating that active asthma symptomology may support an

Eighth Amendment claim and discussing cases which illustrate the distinction between an

asthma condition and an asthma attack); Patterson v. Lilley, No. 02-CV-6056, 2003 WL

21507345, at *4 (S.D.N.Y. June 30, 2003) ("Being an asthmatic (a person susceptible to

asthma attacks) is not a condition, in Eighth Amendment parlance, that is severe or

'sufficiently serious.' The existence of the condition is distinct from the situation in which an

inmate is suffering an actual attack.").  Moreover, "[t]he [Supreme] Court [held] that a

plaintiff "states a cause of action under the Eighth Amendment by alleging that [defendants]

have, with deliberate indifference, exposed him to levels of ETS that pose an unreasonable

risk of serious damage to his future health." Warren v. Keane, 196 F.3d 330, 332-333 (2d Cir. 1999) (citing Helling, 509 U.S. at 35). Therefore, it is clearly established in this circuit "that prison officials could violate the Eighth Amendment through deliberate indifference to an inmate's exposure to levels of ETS that posed an unreasonable risk of future harm to the inmate's health." Id. at 333.

In this case, construing all the facts in favor of Shepherd, he has arguably offered sufficient evidence to establish the first prong of an Eighth Amendment claim. Shepherd suffered two asthma attacks requiring medical attention. Second Am. Compl. at ¶¶ 17, 20. Additionally, while housed in a cell without a window, Shepherd experienced shortness of breath, dizziness, wheezing, and chest pains. Id. at ¶¶ 17, 18, 20. These claims appear adequate to establish that the prevailing levels of ETS were sufficient to cause an unreasonable risk of future harm to his health.

This district has also stated that "in all Eighth Amendment deliberate indifference claims: [n]on-medical prison personnel engage in deliberate indifference where they intentionally delayed access to medical care when the inmate was in extreme pain and has made his medical problem known to the attendant prison personnel." Hoover v. Hardman, No. 99-CV-1855, 2005 WL 1949890, at *6 (N.D.N.Y. Aug. 15, 2005) (citing Baumann v. Walsh, 36 F. Supp. 2d 508, 512 (N.D.N.Y. 1999).

In this case, Ericson, Kremer, and Colvin were corrections officers in the cell block where Shepherd voiced his concerns. Second Am. Compl. at ¶¶ 17, 19, 25. Ericson and Kremer advised Shepherd to file the appropriate grievances and consult the medical department respectively. Id. at ¶¶ 17, 25. These conclusory allegations do not allege or prove that any defendant intentionally delayed, denied, or interfered with Shepherd's

treatment.  If anything, it shows that these defendants were attempting to guide Shepherd's complaints to the correct authorities.  Moreover, there are no indications that these defendants were present during an asthma attack as non-medical personnel and refused to provide care to Shepherd or notification to the proper prison personnel.  It appears, however, that Shepherd remained able to engage the defendants in multiple conversations.  Therefore, Shepherd's allegations fail the second prong of the analysis with respect to Ericson and Kremer.

Shepherd contends that he sent Colvin two requests to change cell blocks but that Colvin never responded to those requests.  Id. at ¶ 19.  Similar to the situation above, these conclusory allegations do not establish that Colvin deliberately delayed or prohibited any transfer request.  Moreover, like Ericson and Kremer, Colvin was a non-medical personnel and could only be found deliberately indifferent if he intentionally delayed access to care when Shepherd was in extreme pain.  There are no allegations of Colvin being present for either of the asthma attacks or preventing Shepherd from receiving the breathing treatments and other medical attention he required.  Thus, Shepherd's allegations fail the second prong of the analysis with respect to Colvin as well.

Accordingly, defendants' motion should be granted with respect to Ericson, Kremer, and Colvin.

**D. First Amendment**

Shepherd alleges that his First Amendment rights were violated when defendants searched his dreadlocks with their hands, ripping his hair.  Defendants contend that this action did not rise to the level of a constitutional violation.

"The First Amendment . . . guarantees the right to the free exercise of religion."  Johnson v. Guiffere, No. 04-CV-57 (DNH), 2007 WL 3046703, at *4 (N.D.N.Y. Oct. 17, 2007) (citing Cutter v. Wilkinson, 544 U.S. 709, 719 (2005)).  "Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause."  Ford v. McGinnis, 352 F.3d 582, 588 (2d Cir. 2003) (citing Pell v. Procunier, 417 U.S. 817, 822 (1974)).   This right "is not absolute or unbridled, and is subject to valid penological concerns . . . ."  Johnson, 2007 WL 3046703, at * 4.

There is no dispute that Shepherd was a Rastafarian.  "A fundamental tenet of the religion is that a Rastafarian's hair is not to be combed or cut, resulting in rope-like strands known as 'dreadlocks.'"  Benjamin v. Coughlin, 905 F.2d 571, 573 (2d Cir. 1990).  This circuit has held that requiring Rastafarians to cut their hair violates their right to the free exercise of religion.  Id. at 576-77.  In this case, viewing the facts in the light most favorable to Shepherd, Tweed and Post disturbed Shepherd's hair by running their hands through it and ripping it after Shepherd advised these defendants that it was against his religious beliefs to have anyone else touch his hair.  Second Am. Compl. at ¶¶ 15-16.  Liberally construed, Shepherd alleges that Tweed and Post cut his hair, a violation of his religious beliefs.  See Benjamin, 905 F.2d at 576-77.  If proven, these allegations suffice to establish a constitutional deprivation.

Accordingly, defendants' motion with respect to Tweed and Post should be denied.


## E. Qualified Immunity

Defendants also contend that they are entitled to qualified immunity.  Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not

violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982); <u>Aiken v. Nixon</u>, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002) (McAvoy, J.), <u>aff'd</u>, 80 Fed.Appx. 146 (2d Cir. Nov. 10, 2003).  However, even if the constitutional privileges "are clearly established, a government actor may still be shielded by qualified immunity if it was objectively reasonable for the . . . official to believe that his [or her] acts did not violate those rights." <u>Smith v. City of Albany</u>, No. 03-CV-1157, 2006 WL 839525, at *16 (N.D.N.Y. Mar. 27, 2006) (quoting <u>Kaminsky v. Rosenblum</u>, 929 F.2d 922, 925 (2d Cir. 1991); <u>Magnotti v. Kuntz</u>, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted)).  A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation.  <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001).  Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation. <u>Aiken</u>, 236 F. Supp. 2d at 230.

Here, as to Ericson, Kremer, and Colvin, the second prong of the inquiry need not be reached because, as discussed <u>supra</u>, accepting all of Shepherd's allegations as true, he has not shown that these defendants violated his constitutional rights.

As to Tweed and Post, the second prong of the inquiry must be met because Shepherd has demonstrated a potential violation of his First Amendment rights with respect to the free exercise of religion claims.  It cannot reasonably be said that either Tweed or Post was unaware of a Rastafarian prisoner's right wear dreadlocks as part of his religious beliefs and not to have those dreadlocks severed.  Thus, questions of fact as to both prongs of these defendants' assertion of qualified immunity preclude granting such immunity on this motion.

17

Therefore, it is recommended that defendants' motion on this ground be granted as to Ericson, Kremer, and Colvin and denied as to Tweed and Post.


### III.  Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that:

    A. The defendants motion for judgment on the pleadings (Docket No. 116) be:

       1. **GRANTED** as to defendants Goord, Gidrich, Wright, Van Buren, Bennette, Ericson, Kremer, and Colvin, and those defendants should be dismissed from this action; and

       2. **DENIED** in all respects as to defendants Tweed and Post; and

    B. The Second Amended Complaint be **DISMISSED** without prejudice as to defendant Riley.


Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Dated:  July 18, 2008
       Albany, New York

                                   *David R. Homer*
                                  United States Magistrate Judge